

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-22-00035-CV

ST. DAVID'S HEALTHCARE SYSTEM, INC., APPELLANT

V.

MALYIA LEZAMA AND MALYIA LEZAMA AS PARENT
AND NEXT FRIEND OF Z.L., APPELLEE

On Appeal from the 345th District Court
Travis County, Texas[1]
Trial Court No. D-1-GN-19-008464, Honorable Maya Guerra Gamble, Presiding

July 21, 2022

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

Appellant, St. David's Healthcare System, Inc., appeals the trial court's order denying its motion to dismiss the claims of appellee, Malyia Lezama, individually and as

---

[1] Originally appealed to the Third Court of Appeals, this appeal was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. TEX. GOV'T CODE ANN. § 73.001. Should a conflict exist between precedent of the Third Court of Appeals and this Court on any relevant issue, this appeal will be decided in accordance with the precedent of the transferor court. TEX. R. APP. P. 41.3.

next friend of Z.L. The trial court denied the motion to dismiss on the basis that Lezama's claims are not health care liability claims. We reverse the judgment of the trial court.

## BACKGROUND[2]

On February 20, 2019, Dr. Vy Janet Ngo, a pediatrician, assisted with the delivery of Z.L. During this procedure, Ngo observed what she believed to be signs of a sexually transmitted infection on the genitals of Z.L. Consistent with her belief, Ngo used her personal mobile phone to take a photograph of Z.L.'s genitalia.

Ngo reported her suspicion that Z.L. had been abused to the Texas Department of Family and Protective Services. The Department interviewed Lezama concerning the possibility of a sexually transmitted infection being passed from Lezama to Z.L. Further, both Lezama and Z.L. were subjected to testing for sexually transmitted infections. Ultimately, the Department ruled out the possibility of sexual abuse.

Lezama brought suit against Ngo and St. David's. She asserted claims against Ngo for intentional infliction of emotional distress, negligence, intrusion on seclusion, and assault and battery. She asserted claims of negligence[3] and vicarious liability against St. David's. Ngo and St. David's filed motions to dismiss Lezama's claims on the basis that each of Lezama's claims constituted health care liability claims, yet Lezama failed to timely file an expert report as required by Chapter 74 of the Texas Civil Practice and Remedies Code. On September 13, 2021, the trial court granted Ngo's motion to dismiss

---

[2] Because of the procedural posture of the case, our identification of the underlying facts is based solely on the allegations made by Lezama in her petition.

[3] Lezama's negligence claims contend that St. David's possessed "complete and total control" over Ngo and was negligent in failing "to adequately train, supervise, hire, or retain" Ngo.

2

on the basis that Lezama's claims against Ngo are "impermissibly recasted health care liability claims." On December 21, 2021, the trial court denied St. David's motion to dismiss because Lezama's claims against St. David's "are not health care liability claims governed by Chapter 74 . . . ." Under Texas Civil Practice and Remedies Code section 51.014(a)(9), St. David's filed the instant interlocutory appeal challenging the trial court's denial of its motion to dismiss. Lezama did not file a brief in response to St. David's brief.

By its appeal, St. David's presents two related issues. By its first issue, St. David's contends that the trial court erred by finding that Lezama's claims against the hospital are not health care liability claims subject to Chapter 74 of the Texas Civil Practice and Remedies Code. By its second issue, St. David's contends that it is entitled to an award of attorney's fees and costs of court pursuant to Chapter 74.

## HEALTH CARE LIABILITY CLAIMS

By its first issue, St. David's contends that the trial court erred by concluding that Lezama's claims against St. David's were not health care liability claims subject to the expert report requirement of section 74.351(b) of the Texas Civil Practice and Remedies Code.

We review a trial court's decision on a motion to dismiss under Chapter 74 for an abuse of discretion. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001) (discussing predecessor to Chapter 74). However, whether claims were intended by the legislature to fall within the class of health care liability claims for which an expert report is required presents a question of statutory construction, which we review de novo. *Tex. W. Oaks Hosp., L.P. v. Williams*, 371 S.W.3d 171, 177 (Tex. 2012).

3

The statute defines "health care liability claim" as:

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from acceptable standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13).  Under this definition, a health care liability claim has three elements: (1) the defendant is a health care provider or physician; (2) the claimant's cause of action is for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, health care, or safety or professional or administrative services directly related to health care; and (3) the defendant's alleged departure from accepted standards proximately caused the claimant's injury or death. *Loaisiga v. Cerda*, 379 S.W.3d 248, 255 (Tex. 2012).  What qualifies as a health care liability claim is broadly defined. *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 855 (Tex. 2005).  In determining whether a claim constitutes a health care liability claim, "we examine the underlying nature of the claim and are not bound by the form of the pleading." *Id.* at 847.  Artful pleading cannot be used to recast or change the nature of the claims when the underlying facts indicate that the claims arose from the provision of health care. *Loaisiga*, 379 S.W.3d at 255; *Diversicare*, 185 S.W.3d at 851.  The broad language of the statutory definition of a health care liability claim creates a rebuttable presumption that a claim is a health care liability claim if it is asserted against a health care liability provider and is based on facts implicating the defendant's conduct during a patient's care, treatment, or confinement. *Loaisiga*, 379 S.W.3d at 256.

4

Here, this rebuttable presumption applies because St. David's is a health care provider and the facts upon which Lezama premises her claims occurred when both Lezama and Z.L. were patients receiving care at St. David's. Thus, Lezama bore the burden to rebut this presumption to overcome St. David's motion to dismiss. *Id.*

Both of Lezama's claims against St. David's are based on actions taken by Ngo during the delivery of Z.L. It is noteworthy that the trial court granted a motion to dismiss filed by Ngo on the basis that Lezama's claims were "impermissibly recasted health care liability claims." Nonetheless, the trial court denied St. David's motion to dismiss because it concluded that Lezama's claims against St. David's were not health care liability claims.

We must analyze the facts giving rise to Lezama's claims and the nature of those claims to determine whether they constitute health care liability claims. During the delivery of Z.L., Ngo observed what she believed to be signs of a sexually transmitted infection on Z.L.'s genitals. She took a picture of the affected area with her personal mobile phone. Lezama complains that Ngo should not have taken the picture nor reported the matter to the Department as suspected child abuse or neglect. We conclude that Ngo's act of taking a picture of Z.L.'s genitals was in furtherance of diagnosing a potential infection of the newborn Z.L. Further, such action occurred during the provision of health care. Thus, we conclude that a challenge to Ngo's action of taking the picture constitutes a health care liability claim. As for Ngo's reporting her suspicion to the Department, a doctor has a statutory duty to report a reasonable belief that a child has been abused or neglected. *See* TEX. FAM. CODE ANN. § 261.101(b) (professional, including doctor, has nondelegable duty to report reasonable belief that child has been abused or neglected or may be abused or neglected). Even though the Department did not ultimately find reason

5

to believe that Z.L. was abused or neglected, Ngo developed the suspicion that gave rise to her duty to report while providing health care to Lezama and Z.L. Thus, we conclude that Ngo was statutorily obligated to report her suspicion that Z.L. had a sexually transmitted infection based on information she acquired while providing health care to Lezama and Z.L. *See Fudge v. Wall*, 308 S.W.3d 458, 463–64 (Tex. App.—Dallas 2010, no pet.) (whether licensed professional counselor properly reported suspicion of child abuse to Department depends on applicable standard of care and is, thus, a health care liability claim). For the foregoing reasons, we conclude that Lezama's claims against Ngo are health care liability claims.

However, this interlocutory appeal addresses Lezama's claims against St. David's, so we must determine whether those claims assert health care liability claims. We have already concluded that the actions of Ngo occurred as part of her provision of health care, so claims against St. David's based directly on those actions are also health care liability claims. Lezama asserts that St. David's failed to adequately train, supervise, hire, or retain Ngo leading to her actions described in the preceding paragraph. However, decisions regarding medical staffing or training necessary for the care and protection of patients are inseparable from the provision of health care. *See Diversicare*, 185 S.W.3d at 849–50. Likewise, claims that allege that a hospital was negligent in its training, hiring, supervision, and/or retention of a physician have been determined to constitute health care liability claims. *See Heart Ctr. of N. Tex. v. S.W.*, No. 02-20-00005-CV, 2020 Tex. App. LEXIS 6449, at *14–17 (Tex. App.—Fort Worth Aug. 13, 2020, pet. denied) (citing *Diversicare*, 185 S.W.3d at 849–50, *Heriberto Sedeno, P.A. v. Mijares*, 333 S.W.3d 815, 818–22 (Tex. App.—Houston [1st Dist.] 2010, no pet.), *Christus Spohn Health Sys. Corp.*

6

*v. Sanchez*, 299 S.W.3d 868, 874–75 (Tex. App.—Corpus Christi 2009, pet. denied), *Holguin v. Laredo Reg'l Med. Ctr., L.P.*, 256 S.W.3d 349, 354–56 (Tex. App.—San Antonio 2008, no pet.), and *Oak Park, Inc. v. Harrison*, 206 S.W.3d 133, 139–40 (Tex. App.—Eastland 2006, no pet.), among others). Thus, Lezama's claims that relate to St. David's training, supervision, hiring, or retention of Ngo constitute health care liability claims for which an expert report is required.

Having concluded that Lezama's claims against St. David's are health care liability claims, we sustain St. David's first issue. We reverse the trial court's denial of St. David's motion to dismiss Lezama's claims and instruct the trial court to dismiss Lezama's claims against St. David's with prejudice. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b)(2).

### ATTORNEY'S FEES AND COSTS

By its second issue, St. David's contends that the trial court should have awarded St. David's attorney's fees and costs of court. When, as here, a health care liability claimant does not serve an expert report within 120 days of the defendant's answer, on motion of the health care provider, the court must dismiss the claim with prejudice and award the health care provider reasonable attorney's fees and costs of court. *Id.* § 74.351(b). Because we have concluded above that Lezama's claims against St. David's are health care liability claims and because she did not timely serve an expert report, the trial court was obligated to dismiss Lezama's claims and award St. David's its reasonable attorney's fees and costs of court. While counsel for St. David's submitted an uncontested affidavit for attorney's fees and legal costs incurred in connection with defending Lezama's claims, St. David's contends that it has continued to incur fees and

7

costs in connection with appellate proceedings which are not reflected in this affidavit. As such, we instruct the trial court to determine and award the reasonable amount of St. David's attorney's fees and costs of court.

## CONCLUSION

Having sustained both of St. David's issues, we reverse the trial court's denial of St. David's motion to dismiss and instruct the trial court to enter an order dismissing Lezama's claims against St. David's with prejudice and awarding St. David's reasonable attorney's fees and costs of court incurred in defending against Lezama's claims.


Judy C. Parker
Justice

8